(No. 2177—

RALPH C. FOSTER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 11, 1934.*

HARRIS & HARRIS, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

Ralph C. Foster filed his complaint on May 17, 1933, asking an award under the Compensation Act for injuries sustained through frostbite while engaged in removing snow from S. B. I. Route No. 95. It has been stipulated between claimant and respondent that the occupation of claimant at the time in question was that of a day laborer, that his wages were thirty-five cents (35c) per hour on an eight and one-half hour a day basis, six days a week, and that by virtue thereof and under Section 10-E of the Compensation Act, his average wage would be $18.00 per week.

Claimant was employed with others from five o'clock p. m., on February 7, 1933, until 7:30 o'clock in the morning of February 8, 1933, during a severe snow storm, to assist in removing snow from S. B. I. No. 95. It was extremely cold, from nineteen to twenty-four degrees below zero, and very windy. A snow storm had been raging and in places the drifts were five feet deep. Every effort was apparently being made by the crew, in which claimant was working to get the roads open. There was no shelter, except on one or two occasions, when the men stopped work and went to a nearby farmhouse to get warm. As a result of the exposure to the severe weather, claimant froze his feet during the night. Claimant did not know his feet were frozen until he arrived home the next morning and attempted to remove his shoes. A doctor was called and he was treated for frozen feet and on March 19, 1933, was operated upon. The great toe on the right foot was removed by amputation into the foot, the second toe was entirely removed, the third toe at the third joint was removed and the fifth toe at the first joint. On the left foot the great toe was completely removed. Claimant remained under treatment at the hospital for five weeks after the operation, and the feet eventually healed and about the first of September, 1933, he was able to discard his crutches and thereafter walk.

Claimant incurred a bill of $69.00 with Dr. McPherson; a hospital bill at the Marietta Phelps Hospital of $142.35; a medical bill due Dr. J. W. Hermetet of $164.00, all of which are shown to be reasonable charges.

Claimant was paid $7.25 by the State for his work on the night his feet were frozen, and was thereafter paid $44.44 while in the hospital. It appears that notice of the injury was duly given and the claim filed, as provided under the terms of the Compensation Act.

On the night of the injury claimant was wearing a pair of common black cotton socks, ankle high shoes, and four-buckle overshoes. He had on a big fur coat, his shoes were in good condition, and his overshoes were comparatively new. James Hainline, a fellow-workman, testified that he froze his finger while engaged in the work, and while there was a vacant farmhouse where the men built up some sort of fire at one time, when nearby, there was no place where

they could warm themselves at any regular intervals, nor did the nature of the work of keeping the snow cleared from the road-way throughout the night, permit of much opportunity to thus warm themselves.

It seems that the only question at issue is one of law, viz: whether or not the freezing of the feet of claimant is an accidental injury, compensable under the Workmen's Compensation Act. It is admitted he was an employee of the State and acting within the scope of his employment at the time complained of. Claimant contends that the accident arose out of and in the course of his employment and that the nature of his work subjected him to exposure to the elements in a much greater degree than that to which others in the community were subject. Claimant contends that where an employee, because of his duties, is exposed to special or peculiar danger from the elements or weather conditions, greater than that to which others in the community are exposed, and that an unexpected injury is sustained thereby, such injury constitutes an accident arising out of, and in the course of, employment and compensation is payable therefor.

A case with citations contained therein, in point, is that of *Consumers Company* vs. *Industrial Commission*, where claimant suffered injuries through frostbite, while engaged in shoveling coal. In that case no compensation was allowed and the court said:

"Injuries resulting from exposure to weather conditions, such as heat, cold, ice, snow or lightning, are generally classed as risks, to which the general public is exposed, and not within the purview of Workmen's Compensation Acts, although the injured person at the time he received his injury may have been performing duties incident to, and in the course of his employment. . The rule is generally recognized, however, that if an employee, because of his duties, is exposed to a special or peculiar danger from the elements, a danger that is greater than that to which other persons in the community are subjected, and an unexpected injury is sustained by reason of the elements, the injury constitutes an accident, arising out of and in the course of the employment within the meaning of the Workmen's Compensation Acts. If the character of the employment is such as to intensify the risks that arise from extraordinary natural causes, an accident under such circumstance is one arising out of the employment."

*Consumers Company* vs. *Industrial Commission*, 324 Ill. at 155.

The Attorney General, in his brief, cites this further wording from the above opinion:

"The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. If the accident under the circumstances of the employment was merely a consequence of the severity of the elements to which persons in the locality, whether so employed or not, were equally exposed, it is not compensable."

Considering the language of the entire opinion just cited, and the citations therein contained, this court is of the opinion that the claim at bar is compensable under the Workmen's Compensation Act.

Claimant on the night in question was engaged in work that exposed him in an extra-ordinary degree, to the effects of the elements. Helping to clear the roadway throughout the night in a blizzard, with a temperature from ten to twenty degrees below zero, exposed him to special and peculiar danger of freezing, greater than that shared by other persons in the same locality. Working in the particular spots where the snow was drifted placed him in position more hazardous and more severe than those not similarly working. The demand for constant and active service with no adequate opportunity of warming himself from time to time, brings claimant within the approval of the cases cited. None of the material circumstances on which a denial of relief in the Consumers Case *(supra)* were present here. The place where claimant worked was unprotected, no place was provided by the State where claimant and the other men could occasionally warm themselves, and although claimant was apparently warmly dressed, he suffered the injuries complained of. As a further indication of the severity of the immediate work in which he was engaged, is the fact of the freezing of a finger by one of his fellow workmen, James Hainline.

Under the facts appearing herein, compensation should be allowed as follows, on the basis of wages at $18.00 per week:

For loss of great toe on right foot, 50% of average weekly wage for 35 weeks.

For loss of second toe on right foot, 50% of average weekly wage for 12 weeks.

For loss of third toe on right foot, 50% of average weekly wage for 12 weeks.

For loss of first phalange on fifth toe of right foot (Compensable on basis of one-half of total loss of toe) 50% of the average weekly wage for 6 weeks.

For loss of great toe on left foot, 50% of average weekly wage for 35 weeks.

| | |
|---|---:|
| Total for specific loss—100 weeks at $9.00 per week.......... | $900.00 |
| Also for temporary total incapacity for 31 weeks from the 8th day of February, 1933 to September 13, 1933, and 50% of the average weekly wage, or $279.00, against which is a credit of $44.44 previously paid, leaving a balance for temporary total incapacity of.. | $234.56 |
| Dr. Mac Pherson, medical account............................... | 69.00 |
| Marietta Phelps Hospital ....................................... | 142.35 |
| Dr. Hermetet, medical account.................................. | 164.00 |
| Total ................................................... | $1,509.91 |

The record indicates that the services of the doctors in question and the hospital were rendered at the request of the State, through Herbert Oakman, Maintenance Supervisor, District No. 4, State Highway Department. The court is of the opinion that these bills should, under the evidence, be allowed.

An award is therefore made in the sum of Fifteen Hundred Dollars and Ninety-one Cents ($1,500.91). As the period during which the weekly payments would be made under ordinary practice will have expired by the time the lump sum payment is available by appropriation of the Legislature, no commutation to a lump sum will be made. In paying the award a voucher of $69.00 should be issued to claimant, for the use of Dr. C. H. MacPherson; another to claimant for use of Dr. J. W. Hermetet for $164.00; another to claimant, for the use of Marietta Phelps Hospital for $142.35 and the balance of $1,134.56 should be payable to claimant.